512 A.2d 739

Sidney Greenstein, Sidney Greenstein, M.D., Associates, Internal Medicine and Cardiology, Petitioner *v.* Commonwealth of Pennsylvania, Department of Health, Respondent.

Argued April 10, 1986, before Judges MACPHAIL and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Charles W. Bowser,* with him, *James P. Cousounis, Pechner, Dorfman, Wolffe, Rounick & Cabot,* for petitioner.

*Christine S. Dutton,* Assistant Counsel, with her, *Carolyn B. McClain,* Assistant Counsel, and *Ruth M. Siegel,* Chief Counsel, for respondent.

*Thomas W. Wood,* with him, *William H. Wood, Keefer, Wood, Allen & Rahal,* for intervenor, Pennsylvania Blue Shield.

OPINION BY JUDGE MACPHAIL, July 1, 1986:

Sidney Greenstein, M.D. (Petitioner) petitions for review of the Department of Health's (Department) approval of Pennsylvania Blue Shield's (PBS) termination of Petitioner as a participating doctor.

The issue presented is whether Petitioner was entitled, under constitutional due process or the Administrative Agency Law (Law),[1] to a hearing before the Department.

Petitioner was a participating PBS doctor in Philadelphia, Pennsylvania. The "Participating Doctor's Agreement with Pennsylvania Blue Shield" (Agreement), which Petitioner signed, provided, in pertinent part:

> I will perform services for Blue Shield Subscribers, make reports to Blue Shield concerning such services and accept compensation therefor, as provided for in the Blue Shield Regulatory Act, as heretofore or hereafter reenacted or amended, and the By-laws, the applicable Rules and Regulations, the applicable Subscription Agreements or Master Contracts, and the applicable Fee Schedules or Prevailing Fee Program, all as heretofore or hereafter adopted or entered into by Blue Shield under authority

---

[1] 2 Pa. C. S. §§501-508.

of said Regulatory Act, with any required governmental approval.

. . . .

This Agreement shall continue in effect until terminated by me by giving thirty (30) days' prior written notice to Blue Shield; or until terminated by Blue Shield with the approval of the Pennsylvania Department of Health.

PBS received several complaints from its subscribers alleging that Petitioner had charged them fees in excess of the PBS allowance. Section B(19) of PBS's "Regulations for Participating Doctors" (Regulations) requires that:

In the event any Participating Doctor has received, either from PBS or from the subscriber, an amount in excess of the amount determined by PBS to be payable to him with respect to covered services performed for the subscriber, such excess amount shall be returned promptly to PBS, or to the subscriber, as the case may be.

After investigating each complaint, PBS determined that Petitioner had in fact received an amount from each of the complaining patients in excess of the amount determined to be payable with respect to covered services. In each case, PBS notified Petitioner that he could not, pursuant to the Agreement, charge its subscribers in excess of the allowed amounts. Petitioner eventually refunded overcharges to four of the six complainants. PBS reimbursed those subscribers to whom Petitioner refused to make refunds.

By letter dated April 2, 1984, PBS informed Petitioner that refusing to return all excess payments violated the Agreement and would no longer be tolerated. PBS further stated that "[i]n the absence of a change in your position on this matter or your resignation, we will refer your case to the Medical Review Committee

448

[(MRC)][2] at the May 1, 1984 meeting." Petitioner responded by letter conceding that he had charged some of his patients who were PBS subscribers in excess of PBS allowed amounts but that his overcharging was justified: Petitioner averred that his prevailing fee

[2] Article X of the Pennsylvania Blue Shield By-Laws (By-Laws) entitled "Disputes and Controversies Involving Doctors" provides, in pertinent part:

Section 1. Review Committees. All matters, disputes or controversies arising out of the relationship between the Corporation and doctors of medicine, doctors of osteopathy, doctors of dental surgery, doctors of podiatry or doctors of optometry, including any questions involving professional ethics, shall be considered, acted upon, disposed of and determined by the appropriate one of the two Review Committees hereinafter referred to.

Section 2. Medical Review Committee. There shall be a Medical Review Committee consisting of at least five (5) members, each of whom shall be appointed by the Chairman of the Board of Directors of the Corporation and each of whom shall serve until his successor is appointed. A majority of the members of the Medical Review Committee shall be doctors who are either members of the Board of Directors of the Corporation or members of the Corporation.

. . . .

Section 7. General Proceedings Before a Review Committee. The Secretary of each Review Committee shall prepare an agenda of the matters to be considered at each Committee meeting. He shall also determine initially whether any particular matter may affect the status of a doctor as a Participating Doctor of the Corporation because of conduct incompatible with his status as a Participating Doctor of the Corporation, including but not limited to:

(a) Violation of his Participating Doctor's Agreement;

(b) Violation of the regulatory legislation applicable to the Corporation;

(c) Violation of the Regulation for Participating Doctors of the Corporation;

profile[3] was inadequate to compensate him for laboratory work performed in his office. He further stated that he was willing to work for an amicable resolution and expressed his desire for an "open hearing" before the MRC. By letter dated April 25, 1984, PBS acknowledged Petitioner's alleged justification but stated:

---

(d) Refusal to adhere to the service benefit concept of the Corporation;

(e) Violation of Federal or State criminal statutes.

If the Secretary determines that a matter may involve such conduct, he shall request legal counsel of the Corporation to prepare an appropriate Complaint setting forth the matter involved, which Complaint shall be submitted to the Committee along with the matter involved.

. . . .

Section 8. Proceedings Involving Status of a Doctor as a Participating Doctor. If a Review Committee determines that a hearing should be held with respect to any matter which has been stated in a Complaint, the Chairman shall promptly fix a time, date and place for such hearing. The Participating Doctor involved shall be given at least fifteen (15) days' written notice by the Secretary of the Committee of the date, time and place of such hearing, and the doctor shall be furnished with a copy of the Complaint. If the doctor affected by the Complaint so desires, he shall be allowed to file a written Answer to the Complaint, provided such Answer is filed with the Secretary of the Committee at least five (5) days prior to the hearing. At the hearing such witnesses may be heard and such evidence may be received as is deemed to be relevant and of reasonable probative value, provided, however, that formal rules of evidence need not be adhered to. The doctor affected by the Complaint shall be afforded an opportunity to be heard before the Committee, either in person or by counsel, and to produce evidence and witnesses at such hearing. All testimony shall be stenographically recorded and a complete record shall be kept of the hearing.

After the hearing, the Review Committee, by majority vote of those members who are doctors, shall take whatever action it deems appropriate, based on the evidence and

As noted in your letter, due to your dissatisfaction with your profiles, you routinely charge subscribers in excess of the Blue Shield allowance for covered services performed in the office. As a participating doctor with Pennsylvania Blue Shield, you have agreed to accept the Blue Shield allowance for covered services. Your contractual agreement precludes your charging subscribers in excess of this amount.

In accordance with the By-Laws, the MRC issued a complaint against Petitioner and scheduled a hearing to determine Petitioner's status as a participating doctor.

Counsel for Petitioner requested a continuance of the hearing, which was granted. The hearing was subsequently rescheduled for November 8, 1984 at 1:15 p.m. Neither Petitioner nor his counsel appeared at the hearing. PBS presented the testimony of PBS's Manager of Private Business Utilization Review as well as PBS's Professional Service and Review Representative to support its position that Petitioner should be removed from the PBS roster of participating doctors. Several documents substantiating the subscribers' complaints against Petitioner, PBS's actions with regard thereto, and Petitioner's responses were introduced into evidence.

---

testimony produced at the hearing and, if such action involves either suspension or termination of a doctor as a Participating Doctor, the matter shall be promptly referred to the Secretary of Health of the Commonwealth of Pennsylvania for approval or for such other action as he may deem appropriate.

[3] PBS maintains a fee profile on each participating doctor which provides for payment to the doctor of his "usual fee" (that fee which the doctor most frequently charges) as limited by the "customary fee" charged by other doctors in the same geographic area for the same service. *V. J. Hajjar Assocs., Inc. v. Medical Service Ass'n of Pennsylvania,* 15 Pa. D. & C. 3d 251 (1980). Therefore, it is quite likely that two different participating doctors could have different fee profiles for the same services.

At the conclusion of the hearing, the MRC moved to suspend Petitioner as a participating doctor. The MRC chairman issued a certificate in support of the termination, and copies of the hearing transcript, notice of hearing and certificate were forwarded to the Department with PBS's request that the Department approve the termination pursuant to Section 6324(a) of the Professional Health Services Plan Corporations Act (Act).[4] Section 6324(a) of the Act states:

> (a) **Admission to plan.**—Every health service doctor practicing within the area covered by any professional health service corporation shall have the right, on complying with such regulations as the corporation may make with the approval of the Department of Health, to register with such corporation for such general or special professional health services as he may be licensed to practice, within that area, but the corporation may, with the approval of the Department of Health, refuse to place the name of any health service doctor on its register. *Any professional health service corporation may, with the approval of the Department of Health, remove from its register the name of any health service doctor after due notice and opportunity for hearing for cause satisfactory to the corporation.*

(Emphasis added.) The Department formally approved the recommended termination on March 11, 1985.[5]

Petitioner filed the instant petition for review asserting that he should have been afforded "some kind of

---

[4] 40 Pa. C. S. §6324(a), repealed in part by the Fraternal Benefit Society Code, 40 P.S. §1141-905. PBS is, of course, a professional health service corporation.

[5] The Department forwarded a copy of the approval letter to Petitioner. The termination was effective March 25, 1985: as of that date, PBS would reimburse those patients of Petitioner who were PBS subscribers directly.

hearing" before the Department, the agency with the authority to approve or disapprove the termination. He argues that the termination deprives him of his property interest, remaining a participating PBS doctor, and that therefore constitutional procedural due process guarantees apply.

One is entitled to a due process hearing where, by state action, he suffers the loss of a protected property interest. *Arnett v. Kennedy,* 416 U.S. 134, 164 (1974); *Levine v. Department of Education,* 79 Pa. Commonwealth Ct. 357, 468 A.2d 1216 (1984). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .' " *Cleveland Board of Education v. Loudermill,* U.S. , , 84 L.Ed. 2d 494, 501 (1985), quoting *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). Petitioner contends that Section 6324(a) of the Act creates such an interest. We disagree. Section 6324(a) of the Act does not require PBS to maintain a doctor, once accepted, forever on its register: it permits PBS, for cause satisfactory to PBS, to remove a doctor from its register. It is not the Department which determines whether a doctor's participation with PBS may be terminated. Section 6324(c) of the Act expressly requires that determination be made solely by health care providers:

> All matters, disputes, or controversies relating to the professional health services rendered by the health service doctors, or any questions involving professional ethics, shall be considered and *determined only by health service doctors* as selected in a manner prescribed in the bylaws of the professional health service corporation. (Emphasis added.)

*See also* Section 1, Article X of the By-Laws. Whether there is cause satisfactory to PBS is a determination to

be made by Petitioner's peers participating with PBS, not the Department. We conclude that Petitioner does not have a protected property interest in remaining a participating doctor and that constitutional due process considerations do not apply to the case at bar.

Petitioner also argues that the Department's approval constitutes an adjudication for purposes of the Law which requires a hearing to be held. An adjudication is defined as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa. C. S. §101. Section 504 of the Law provides that "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa. C. S. §504.[6] "The essential elements of due process in administrative proceedings are notice and the opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case, before a tribunal with jurisdiction over the matter." *Wojciechowski v. Unemployment Compensation Board of Review,* 47 Pa. Commonwealth Ct. 116, 119, 407 A.2d 142, 143 (1979).

---

[6] Not every action by an agency constitutes an adjudication. *See Salvucci v. Secretary of Commerce,* 81 Pa. Commonwealth Ct. 361, 473 A.2d 1107 (1984). The Department's action is only to ensure that cause satisfactory to PBS existed to support the termination and that the decision to terminate was not arbitrarily made. The Department's action, therefore, is not an adjudication and cannot be used to invoke our appellate jurisdiction. A challenge to the Department's action would be properly maintained in this Court's original jurisdiction. *See* Section 761 of the Judicial Code, 42 Pa. C. S. §761; *Farmland Industries, Inc. v. Penn Dairies, Inc.,* 81 Pa. Commonwealth Ct. 340, 473 A.2d 730 (1984). Pursuant to 42 Pa. C. S. §708, we will treat the proceeding herein as if it were an action of mandamus brought to obtain an order requiring a hearing. *See Levine,* 79 Pa. Commonwealth Ct. at 363 n.3, 468 A.2d at 1219 n.3.

It is not disputed that Petitioner herein had both notice of the hearing before the MRC and the opportunity to be heard. Petitioner elected not to be present at the hearing and cannot now claim that he has been denied due process. *See Gutman v. State Dental Council and Examining Board, Bureau of Professional Affairs,* 76 Pa. Commonwealth Ct. 193, 463 A.2d 114 (1983). "A 'fair trial in a fair tribunal is a basic requirement of due process.' In re Murchison, 349 U.S. 133, 136 (1955)." *Dayoub v. State Dental Council and Examining Board,* 70 Pa. Commonwealth Ct. 621, 625, 453 A.2d 751, 753 (1982). Petitioner has not alleged that the hearing before the MRC was biased or predisposed against him and there is nothing in the record to indicate that Petitioner was denied a fair hearing before a fair tribunal. Moreover, we fail to see how remaining a participating doctor with PBS affects "privileges, immunities, duties, liabilities or obligations" under Section 504 of the Law.[7] Therefore, we do not believe that Petitioner is entitled to a hearing before the Department under Section 504 of the Law.

In sum, we have determined that for constitutional purposes, Petitioner does not have either a protected

---

[7] Petitioner argues that "it cannot be truly disputed that Petitioner's ability to be reimbursed for services performed for the numerous Blue Shield subscribers is directly and immediately harmed . . . ." Petitioner's Brief at 36. There is nothing to indicate, however, that any particular economic hardship would result from not participating. Participating doctors are paid directly by PBS, whereas non-participating doctors are paid by their patients. Those patients who are PBS subscribers are, in turn, reimbursed by PBS to the extent of the PBS allowance for the covered service. *Pennsylvania Dental Ass'n v. Department of Health,* 75 Pa. Commonwealth Ct. 7, 461 A.2d 329 (1983). Whether or not Petitioner is a participating doctor, he will receive payment for his services. We note that Petitioner has not alleged that he will lose patients if he is not participating.

property or personal interest in remaining a participating doctor and that Section 504 does not entitle Petitioner to a hearing before the Department. Having determined that Petitioner has no right to a further hearing, we must dismiss this petition.

ORDER

The petition for review filed by Sidney Greenstein, M.D., Sidney Greenstein, M.D., Associates, Internal Medicine and Cardiology, is dismissed.