531 A.2d 42

Betty C. Williams, Appellant *v.* The City of Pitts-burgh, et al., Appellees.

Argued March 25, 1987, before President Judge CRUMLISH, JR., and Judges MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Eugene A. Lincoln,* for appellant.

*Deborah Miskovich,* with her, *Judith W. Spain,* Assistant City Solicitor, *D. R. Pellegrini,* City Solicitor, for appellees.

OPINION BY JUDGE PALLADINO, September 4, 1987:

Betty C. Williams (Appellant) appeals from an order of the Court of Common Pleas of Allegheny County which affirmed her discharge as a police officer by the City of Pittsburgh. For the reasons set forth below, we affirm.

Appellant was employed by the City as a school teacher for the 1977-78 school year. During the same period of time, Appellant was also working for the City as a police officer. Upon learning of Appellant's dual employment, the Superintendent of Police for the City notified Appellant in a letter dated June 26, 1978 that her dual employment violated Section 707 of the City of Pittsburgh Home Rule Charter (Charter) which states:

**707. MULTIPLE EMPLOYMENT PROHIBITED**

No person shall hold more than one compensated position in city government, and no compensated city employee shall hold a compensated position in any other government except as follows:

a. officer or member of the Pennsylvania National Guard or federal reserve;

b. the controller may also serve as controller for the city school district; and the deputy controller may also serve as deputy controller for the city school district;

c. a treasurer, or person serving in that capacity, may also serve as treasurer for the city school district;

d. member or employee of any sinking fund commission or pension board.

The letter, which was delivered the same day by messenger, stated that because Appellant may not have been aware of the details of the Charter, she would be given an opportunity to submit a copy of her resignation as an employee of the City Board of Education. The letter concluded: "Failure to immediately submit this letter to my office will leave me no choice but to terminate your employment with the Department of Police."

In response to his letter, the Superintendent received a letter from Appellant's attorney stating that Ap-

pellant was appealing the decision. Thereafter, the Superintendent notified Appellant in writing that she was suspended for five days and that if he did not receive a satisfactory response within that time, her employment would be terminated. Appellant's attorney then sent a demand to the Superintendent for a court hearing pursuant to Section 7 of the Policemen's Civil Service Act, Act of August 10, 1951, P.L. 1189, *as amended,* 53 P.S. §23537. Finding this response unsatisfactory, the Superintendent dismissed Appellant as a police officer on July 5, 1978. Both the Pittsburgh Civil Service Commission and the trial court sustained her discharge, and this appeal followed.

Appellant contends: (1) that the Superintendent did not possess authority at law to discharge her; (2) that the Superintendent's failure to afford her a full adversarial hearing violated both her constitutional guarantees of due process and the Policemen's Civil Service Act; and (3) that Section 707 of the Charter, prohibiting dual employment with limited exceptions, is unconstitutional and violative of the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, P.L. 62, *as amended,* 53 P.S. §§1-101 to 1-1309.

### Superintendent Authority

Appellant contends that the Superintendent did not possess legal authority to discharge her under Section 701 of the Charter, which states:

> The mayor shall propose a personnel system for approval and adoption by ordinance. The system shall be uniform for all employees. . . . Appointments, promotions and removals of subordinate officers and employees within major administrative units shall be made by the major administrative unit head on the basis of the system adopted.

While Section 813 of the Charter explicitly states that the Charter was to become effective on the first Monday of January, 1976, the personnel system to which Section 701 refers was not adopted and made effective by City Council until August 9, 1978, one month following Appellant's dismissal. Appellant contends, therefore, that the Superintendent had no authority to discharge her. We disagree.

This court has specifically held that general rules of statutory construction are applicable in interpreting the provisions of a home rule charter. *Cottone v. Kulis,* 74 Pa. Commonwealth Ct. 522, 460 A.2d 880 (1983). Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(a) states: "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." Moreover, "in ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used: (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C. S. §1922(1); *Unionville-Chaddsford School District v. Rotteveel,* 87 Pa. Commonwealth Ct. 334, 487 A.2d 109 (1985).

To accept Appellant's argument that the Superintendent had no authority to dismiss her because the specific procedural system anticipated by Section 701 had not yet been adopted would be tantamount to concluding that the heads of *all* administrative units would be completely paralyzed from making *any* personnel moves—appointments and promotions as well as removals. We decline to conclude that the drafters of the Charter intended such an absurd result.

Section 701 states a number of specific requirements for the anticipated personnel system—uniformi-

ty, merit recognition, and consideration of seniority. We conclude, therefore, that prior to the adoption of the proposed system, a major administrative unit head[1] maintained authority to make personnel moves so long as they were consistent with these requirements for the proposed system and otherwise in accordance with law.

Since Section 707 of the Charter (the basis upon which Appellant was discharged) applies uniformly to all employees of the City and has no relevancy with respect to considerations of merit or seniority, we conclude that the Superintendent had the authority under Section 701 of the Charter to dismiss Appellant for violating the Charter's proscription against dual employment. Of course, authority to effect such a dismissal must also be consistent with constitutional protections and other legislative enactment. Accordingly, we turn to Appellant's constitutional and statutory challenges to her discharge.

### PROCEDURAL LEGALITY OF APPELLANT'S DISCHARGE

Appellant contends that she was denied procedural due process of law by the Superintendent's failure to provide her with a full adversarial pre-termination hearing. She alleges that she maintains a substantive property interest in her continued employment by the City as a policewoman and that the City may not deprive her of that property interest without a formal adversarial hearing.

It is now firmly established that where a state legislative body creates by enactment a sector of public employment, it thereby confers a substantive property interest which is subject to procedural protections of the

---

[1] We hold that the Superintendent of the Department of Police is a major administrative head within the meaning of Section 701.

due process clause of the Fourteenth Amendment to the United States Constitution. *Board of Regents v. Roth,* 408 U.S. 564 (1972); *Greenstein v. Department of Health,* 98 Pa. Commonwealth Ct. 445, 512 A.2d 739 (1986); *Brown v. Taylor,* 90 Pa. Commonwealth Ct. 23, 494 A.2d 29 (1985). Furthermore, once conferred, the legislative body may not constitutionally authorize deprivation of such interest through procedural mechanisms that are less than the appropriate minimum standards of due process. *Cleveland Board of Education v. Loudermill,* 468 U.S. 1249 (1985); *Arnett v. Kennedy,* 416 U.S. 134 (1974) (POWELL, J. concurring in part and concurring in the result).

The essential question remains as to what procedures are appropriate and therefore comport with due process. *Brock v. Roadway Express,*     U.S.    , 107 S.Ct. 1740 (1987); *Mathews v. Eldridge,* 424 U.S. 319 (1976); *Morrissey v. Brewer,* 408 U.S. 471 (1972). In *Loudermill* the Supreme Court of the United States specifically addressed this question and recognized the need for balancing governmental interests in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens with the employee's natural interest in retaining his or her employment and the avoidance of inaccuracies which may lead to erroneous termination. The *Loudermill* court concluded that these competing interests "indicate that [a] pretermination 'hearing', though necessary, need not be elaborate. . . . In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administration action" 105 U.S. at 1495, *citing Mathews v. Eldridge,* 424 U.S. 319, 343.

In *Adamovich v. Department of Public Welfare,* 95 Pa. Commonwealth Ct. 22, 504 A.2d 952, 957, this court adopted the *Loudermill* test, concluding that "all

the employee is entitled to at this [pre-termination] stage of the proceedings, according to *Loudermill,* is notice of the charges, an explanation of the employer's evidence and an opportunity to respond and present his side of the story in an informal pretermination hearing."

In the case at bar, Appellant was discharged because she held compensated positions with both the Board of Education and the Department of Police in violation of Section 707 of the Charter. Prior to her dismissal, she was notified of the Charter's unequivocal proscription against dual employment and given time to respond to the notice. At that point, Appellant was presented with the opportunity to correct any factual inaccuracies upon which the Superintendent may have been relying, or otherwise rebut the charge. Rather than denying the charges or offering any factual explanation as to why Section 707 should not be applicable, Appellant merely demanded a formal hearing. Given the unequivocal, non-discriminatory nature of the Charter's proscription against dual employment and the lack of any factual contestation on the part of the Appellant, any procedural requirement that Appellant be given a formal adversarial pre-termination hearing would only impinge on the government's interest in avoiding unduly burdensome administrative procedural delays without any countervailing employee interest other than the continued maintenance of a form of dual employment which the legislature has expressly deemed unlawful. Accordingly, we conclude that the Superintendent's presentation to Appellant of a notice of charges and opportunity to respond before discharge comports with constitutional guarantees of due process of law.

Of course, while due process mandates that a civil employee be accorded certain minimum procedural safeguards where his property interest in continued em-

ployment is at stake, there is no prohibition against a state's enacting more stringent administrative procedures in order to effect dismissal. In this context, Appellant argues that her discharge without a full adversarial pre-termination hearing by a court violated Section 7 of the Policemen's Civil Service Act, 53 P.S. §23537. Section 7, governing dismissals of policemen for disciplinary reasons, states:

> No employe in the competitive class in any bureau of police in any city of the second class . . . shall be removed, discharged or suspended for a period exceeding ten days *as a penalty* . . . except for just cause . . . nor, in any event, except by the decision of a court, either of trial or inquiry. . . . (Emphasis added.)

This court considered a similar contention regarding Section 7 where the appellant therein had been dismissed from his position as a police officer without any formal adversarial pre-termination hearing because he violated the residency requirements of his position. *McDonough v. City of Pittsburgh, Civil Service Commission,* 25 Pa. Commonwealth Ct. 137, 358 A.2d 763 (1976). We concluded that the purpose of Section 7 was to provide a forum consisting of experienced individuals who are intimately familiar with the rigorous demands and expectations associated with police work to afford review for officers who are charged with disciplinary infractions or misconduct. We held that the inclusion of the words "as a penalty" in the statute indicates that a trial board is to be convened, upon demand, only where the officer involved is the object of discipline, but that the requirements of Section 7 do not apply where the cause for dismissal is failure to meet a generally applicable, non-discriminatory job qualification. *Id.* at 139, 358 A.2d at 764; *Accord Kriss Appeal,* 57 Pa. Commonwealth Ct. 326, 426 A.2d 1216 (1981). In the case at

bar, Appellant was discharged because she violated Section 707 of the Charter prohibiting dual governmental employment. Such a proscription, like a residency requirement, is a general non-discriminatory condition for employment by the City. Accordingly, the procedural requirements for disciplinary discharge provided in Section 7 are inapplicable to the case at bar.[2]

## CONSTITUTIONALITY OF SECTION 707

In addition to challenging the procedures by which she was discharged, Appellant contends that the Charter's proscription against dual employment (with limited exception) is unconstitutional on three grounds: (1) it is unconstitutionally vague; (2) it violates constitutional guarantees of equal protection under the law; and (3) it unreasonably infringes upon her property or liberty interests in violation of the Fourteenth Amendment to the United States Constitution.

Appellant's contention that Section 707 is unconstitutionally vague is meritless. The Supreme Court of Pennsylvania has stated: "[W]hen an ascertainable standard is present in a statute, the violator whose conduct falls clearly within the scope of such standard has no standing to complain of vagueness." *Commonwealth v. Heinbaugh*, 467 Pa. 1, 7, 354 A.2d 244, 247 (1976).

---

[2] Appellant argues that this case is controlled by *Monti v. Flaherty*, 351 F. Supp. 1136 (W.D. Pa. 1972), where the district court reversed the discharge of a policeman for failure by the City of Pittsburgh to provide a hearing. However, the District Court stated: "It is the considered judgment of this Court that plaintiff should have been afforded a hearing prior to his dismissal and that the failure to provide any hearing amounted to a violation of his rights of due process." *Id.* at 1137. Since we hold that Appellant's constitutional rights of due process in this matter were not violated, and that she was afforded an appropriate form of "hearing" in the nature of notice and opportunity to respond, our decision is consistent with *Monti*.

There is no factual dispute that on the date of Appellant's discharge, she was employed in a compensated position[3] by the Board of Education as a school teacher and at the same time by the Department of Police as a police officer. Section 707 clearly states that no person shall hold more than one compensated position in city government. Since both the Board of Education and the Department of Police are administrative agencies of city government, Appellant's conduct clearly falls within that proscribed by Section 707, and Appellant has no standing to challenge the ordinance for vagueness.

Appellant next alleges that the Charter's proscription against dual employment violates constitutional guarantees of equal protection under the law. While Appellant does not state whether her challenge stems from the United States or Pennsylvania Constitutions, we note that Supreme Court of Pennsylvania has ruled that, for equal protection purposes, the protections afforded by the Pennsylvania Constitution are substantially the same as those of the Federal Constitution. *Commonwealth v. Kramer*, 474 Pa. 341, 378 A.2d 824 (1977); *Balitmore & Ohio Railroad Co. v. Department of Labor and Industry*, 461 Pa. 68, 334 A.2d 636 (1975); *see also Latella v. Unemployment Compensation Board of Re-*

---

[3] Appellant argues that since the school year had finished before her discharge, she was not a compensated employee of the Board of Education. We disagree. Appellant was a tenured employee at the time of her dismissal. As such, she was entitled to compensation in the nature of pension benefits. (Pension benefits are compensation for services rendered by an employee to an employer. *Levitt v. Billy Penn Corporation*, 219 Pa. Superior Court, 499, 503, 283 A.2d 873, 875 (1971); *Lowe v. Jones, U.S. Steel and Carnegie Pension Fund*, 414 Pa. 466, 200 A.2d 880 (1964)). These benefits are calculated on the basis of twelve months per year, *not* ten months. Thus, although the school system was in summer recess, Appellant nonetheless remained a compensated employee of the Board of Education when she was discharged.

*view,* 74 Pa. Commonwealth Ct. 14, 18-19 n. 7, 459 A.2d 464, 468 n. 7 (1983).

Our initial inquiry in equal protection challenges is to determine the appropriate standard of judicial review to be applied to the legislation. In this regard, there are three separate kinds of legislation, each calling for a different analysis. First, where the legislation in question infringes upon some fundamental constitutional right or burdens an inherently suspect class of citizens traditionally victimized by discrimination, it will not pass constitutional muster unless it is necessary to advance a compelling state interest. Second, if the legislation affects a less-fundamental but significant interest (such as commercial speech) or burdens a less-suspect class (gender), it will survive constitutional challenge only if it is substantially related to the achievement of an important governmental interest. Finally, if the legislation involves neither of the above classes or interests, it will be upheld unless it is patently arbitrary or lacks any rational relationship to any legitimate governmental interest. *Germantown Savings Bank v. City of Philadelphia,* 98 Pa. Commonwealth Ct. 508, 512 A.2d 756 (1986); *Lyles v. City of Philadelphia,* 88 Pa. Commonwealth Ct. 509, 490 A.2d 936 (1985). Furthermore, 'every presumption must be indulged in favor of the constitutionality of a statute and the burden is heavy on one who challenges it.' *Latella,* 74 Pa. Commonwealth Ct. 19, 459 A.2d at 468 (quoting *Gilman v. Unemployment Compensation Board of Review,* 28 Pa. Commonwealth Ct. 630, 634, 369 A.2d 895, 897 (1977)).

Appellant alleges that Section 707 creates a class of City employees and differentiates members of that class from exercising their right to contract for additional employment with the City. She further argues that the exceptions to the blanket dual-employment proscription as provided in Sections 707(a)-(d) serve no rational governmental purpose. We disagree.

Initially, we note that the classes which Section 707 creates, namely all City employees and, in addition, specific positions within City employment, fall under no recognizable suspect class. Therefore, if a stronger level of scrutiny than the mere rational relation test is to be applied, the legislation must infringe upon some fundamental right or significant constitutional interest.

As discussed earlier in this opinion, there is no inherent or fundamental right to public employment. Rather, it is a statutorily created interest. Hence, while a public employee must be afforded minimum standards of procedural due process before her interest in continued public employment may be infringed (once the legislature has seen fit to create that interest), she nonetheless cannot rely for equal protection purposes on any independent constitutional foundation for her right to contract for additional public employment. In addition, we have held that legislation which infringes upon economic rights warrants only the third, or minimum, level of scrutiny. *Lyles*, 88 Pa. Commonwealth Ct. at 516, 490 A.2d at 941.

Therefore, since Section 707 infringes neither a suspect class nor a fundamental right, we will examine Section 707 of the Charter only to see whether it "bears some rational relationship to a legitimate government end." *City of Philadelphia Board of Pensions and Retirement v. Bordley*, 84 Pa. Commonwealth Ct. 645, 648, 481 A.2d 690, 691 (1984).

The proscription of dual public employment is justifiable for a number of obvious reasons. Given the size of the work force in the City of Pittsburgh, the strong public interest in achieving full employment would be advanced by maximizing availability of public employment to members of the work force. Prohibiting dual employment furthers this goal. Moreover, proscription of dual employment serves to eliminate any conflicts of

interest that could develop between various governmental positions.

In addition, the exceptions to dual employment listed in Section 707(a)-(d) also act to further the public interest. As the trial court stated:[4]

> Allowing City employees to hold the specified positions in addition to their City employment reasonably protects and advances the legitimate public interests, among other things, in making the best use of available expertise, in gaining the fullest advantage from acquired related experience and in promoting efficiency in the execution of important governmental functions.

We conclude that Section 707 of the City of Pittsburgh Home Rule Charter does not violate the guarantees of equal protection under either the Pennsylvania or Federal Constitutions.

As a corollary argument, Appellant contends that once the legislature has created a property interest in public employment, the proscription against dual public employment violates the due process clause of the Fourteenth Amendment as an unreasonable infringement upon that interest. However, since the property interest in public employment is created solely by legislative enactment, the legislature is free to define the substantive nature and scope of that interest. "Property interests, of course, are not created by the Constitution. Rather *they are created and their dimensions are defined* by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. at 577 (emphasis added). *See also Ruckelshaus v. Monsanto Company,* 467 U.S. 986 (1984); *Brown v. Taylor,* 90 Pa. Commonwealth Ct. 23,

---

[4] *Williams v. City of Pittsburgh,* (SA No. 1171 of 1978, filed October 25, 1985), slip op. at 5.

494 A.2d 29 (1985). Thus, the drafters of the Charter are not constitutionally forbidden from creating public employment and at the same time refusing to create dual public employment. Furthermore, since this legislation impinges upon no fundamental right, it is constitutionally permissible under the same rational basis test applied in the context of Appellant's equal protection challenge.

Finally, Appellant argues that Section 707 of the Charter violates the Home Rule Charter and Optional Plans Law. Section 302 of this law, 53 P.S. §1-302, places limitations on municipal powers and states that "the home rule charter adopted in accordance with the provisions of this act shall not give any power or authority to the municipality contrary to, or in limitation or enlargment of powers granted by acts of the General Assembly [with respect to] . . . (4) regulation of public schools." Appellant argues that Section 707 of the Charter constitutes a regulation of public schools in violation of the above quoted statute. We disagree.

Section 707 merely prohibits dual public employment for all public employees of the City (with limited exception). It in no way interferes with the Board of Education's power to regulate the conditions, curriculum or staff of the public schools. As exemplified by the case at bar, Section 707 will, in some instances, require a prospective employee of the Board of Education to choose between positions of public employment. However, this in no cognizable legal sense infringes upon the Board of Education's authority to hire said employee should he or she choose to make himself or herself available for public school employment.

The order of the trial court is affirmed.

ORDER

AND NOW, September 4, 1987, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

Judge CRAIG did not participate in the decision in this case.