## Tabib v. Highmark Inc.

*James R. Walsh,* for plaintiff.
*Stephen Ban,* for defendant.

DiFRANCESCO, *J.,* November 18, 2005—This matter is before the court as a result of a motion for judgment on the pleadings filed by the plaintiff. The dispute in question centers on whether the plaintiff must repay to the defendant insurance company an alleged overpayment for services to the defendant's insureds. Oral argument was taken on October 21, 2005, and the court has subsequently taken this matter under advisement.

## FACTUAL AND PROCEDURAL HISTORY

The plaintiff, Ralph Tabib M.D., was a physician and participating provider in the Highmark Blue Shield Premier Blue Shield Plan, a health insurance plan administered by Highmark Inc. (the defendant). The plaintiff, a specialist in the practice of rheumatology provided said heath care services to defendant's insureds. For his services, the plaintiff submitted claims to the defendant for payment in accord with the defendant's applicable payment schedule. The defendant in turn made payment upon said claims to the plaintiff in accord with the claims submitted.

On or about October 3, 2003, the defendant advised the plaintiff that it was conducting a post-payment review of the plaintiff's medical practice. The plaintiff responded to the October 3, 2005 request by providing the defendant in a timely manner the requested medical and chart information regarding the patients for whom he had submitted claims for services rendered.

On April 27, 2004, the defendant notified the plaintiff via a letter that it had completed its review of the plaintiff's records and had determined in its opinion that the files lacked the required documentation to substantiate the procedure codes utilized for certain patients, and as such, that it had adjusted the procedure codes for such treatment, which reduced the applicable payment rate, and that after consulting an independent consultant, that it contended it had overpaid the plaintiff for services rendered in the amount of $28,168.75. As a result, the defendant was demanding from the plaintiff repayment.

The plaintiff disputed the defendant's contentions, and requested a hearing before the defendant's review committee. Such a request was proper under the Highmark Blue Shield Regulations for Participating Providers. The hearing was held on August 3, 2004. Pursuant to the defendant's regulations for participating providers, the defendant was to provide the plaintiff within 30 days after the hearing date a written notification of the committee's decision.

By letter dated September 3, 2004 (which was 31 days after the hearing), which was post-marked September 7, 2004 (which was 35 days after the hearing), and was received by the plaintiff on September 9, 2004, the defendant advised the plaintiff that its Medical Review Committee had upheld the determination regarding the changes in the codes for the procedures rendered, and therefore, determined that an overpayment of $28,168.75 had occurred. In response, the plaintiff by counsel notified the defendant that it was precluded from seeking repayment from him, since it failed to adhere to its own

regulations regarding the notification requirements of its Medical Review Committee.

On November 4, 2004, the defendant wrote the plaintiff's counsel, and informed him that "there is no legal reason to overturn the Medical Review Committee's decision based on an immaterial deviation from an administrative guideline." The defendant further wrote that the plaintiff was "not harmed in any manner by the clerical oversight." The defendant subsequently withheld payments from the plaintiff on six different dates from November through December 2004, which totaled the amount of repayment, which the defendant was seeking.

As a result of the defendant's actions, the plaintiff filed suit against the defendant on January 13, 2005 in the Cambria County Court of Common Pleas seeking repayment of the $28,168.75 plus interest, which the defendant collected from the plaintiff. In his complaint, the plaintiff contended that since the defendant failed to adhere to its own regulations in not providing written notice to him within 30 days of the hearing of the committee's decision, the defendant was then precluded from collecting the funds it was allegedly owed.

The defendant has vigorously contested the plaintiff's complaint, contending that its Medical Review Committee's decisions can only be judicially reviewed if fraud or other misconduct or substantial due process violations are alleged. The defendant asserts that because the plaintiff makes no such allegations, then the complaint fails to state a claim for which relief can be granted. Further, the defendant contends that the plaintiff has not alleged any prejudice as a result of the untimely mailing,

and therefore, he is not entitled to any monetary damages.

The plaintiff's motion for judgment on the pleadings now follows.

## DISCUSSION

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law. *Newberry Township v. Stambaugh,* 848 A.2d 173, 174-75 n.1 (Pa. Commw. 2004), *petition for allowance of appeal denied,* 580 Pa. 708, 860 A.2d 491 (2004). (citation omitted)

Medical Review Committees such as that of the defendant, are statutorily governed by the Pennsylvania Professional Health Services Plan Corporations Act, 40 Pa.C.S. §6301 et seq.

Regarding the rights of doctors in a health service plan, the Act provides:

*"40 Pa.C.S. §6324(a)-(c): Rights of Health Service Doctors*

*"(a) Admission to plan.*—Every health service doctor practicing within the area covered by any professional health service corporation shall have the right, on complying with such regulations as the corporation may make with the approval of the Department of Health, to register with such corporation for such general or special professional health services as he may be licensed to practice, within that area, but the corporation may, with the approval of the Department of Health, refuse to place

the name of any health service doctor on its register. Any professional health service corporation may, with the approval of the Department of Health, remove from its register the name of any health service doctor after due notice and opportunity for hearing for cause satisfactory to the corporation.

"(b) *Freedom from control.*—Subject to the provisions of section 6322(e) of this title (relating to liability of corporation limited), a professional health service corporation shall impose no restrictions on the health service doctors who administer to its subscribers, as to methods of diagnosis or treatment. The relation between a subscriber, or any of his dependents, and the health service doctor shall be identical with the relation that ordinarily exists in the community between a health service doctor and his patient. Subject to the provisions of subsection (a) of this section, no person shall be permitted to interfere with the choice or selection by a patient of his health service doctor after that choice or selection has been made by an adult of sound mind.

"*(c) Disputes.*—All matters, disputes, or controversies relating to the professional health services rendered by the health service doctors, or any questions involving professional ethics, shall be considered and determined only by health service doctors as selected in a manner prescribed in the bylaws of the professional health service corporation."

In interpreting the rights of physicians in regards to settling payment disputes per the administrative remedies of the Act, the Supreme Court has been explicit in holding that "the requirement of due process of law extends

to administrative as well as judicial proceedings . . . ." *Commonwealth v. Cronin,* 336 Pa. 469, 473, 9 A.2d 408, 410 (1939). The defining decision by the Supreme Court setting forth the due process rights of physicians per the Act is former Chief Justice Flaherty's decision in *Rudolph v. Pennsylvania Blue Shield,* 553 Pa. 9, 717 A.2d 508 (1998).

In *Rudolph,* a participating Blue Shield physician rendered services to patients and was denied payment. Dr. Joseph P. Rudolph had submitted a claim to a medical review committee, which denied the claim. Subsequently, Dr. Rudolph filed a contract action in the Court of Common Pleas of Allegheny County, and the matter was referred to a panel of physician arbitrators. The panel found in Dr. Rudolph's favor, and the common pleas court confirmed the award. On Blue Shield's appeal, the Pennsylvania Superior Court vacated the common pleas court's judgment. See *Rudolph v. Pennsylvania Blue Shield,* 451 Pa. Super. 300, 679 A.2d 805 (1996). The Supreme Court reversed the Superior Court's order and reinstated the common pleas court's judgment. *Rudolph v. Pennsylvania Blue Shield,* 553 Pa. 9, 717 A.2d 508 (1998). The Supreme Court determined that a medical review committee, formed pursuant to the Act, was a "creature of the state" and must adhere to due process standards. *Id.* at 14, 717 A.2d at 510. Regarding the due process rights of a physician, the court further noted:

"The majority of the Superior Court is correct that due process requires that a person aggrieved by the award of a medical review committee is entitled to judicial review for notice and the opportunity to be heard in an appropriate forum and for fraud or other misconduct. But it is

axiomatic that due process also requires that the forum be fair and impartial. Without that, the guarantee of notice, a hearing, and the right to be heard would be no more than an illusion." *Id.*[1]

In understanding the full scope of due process protection as it pertains to the Act, this court takes note of the Commonwealth Court's decision *Greenstein v. Department of Health,* 98 Pa. Commw. 445, 512 A.2d 739 (1986). In this precursor to *Rudolph,* the court noted:

"One is entitled to a due process hearing where, by state action, he suffers the loss of a protected property interest. *Arnett v. Kennedy,* 416 U.S. 134, 164, [94 S.Ct. 1633, 1649, 40 L.Ed.2d 15] (1974); *Levine v. Department of Education,* 79 Pa. Commw. 357, 468 A.2d 1216 (1984). 'Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." ' *Cleveland Board of Education v. Loudermill,* [470 U.S. 535, 105 S.Ct. 1487, 1491,] 84 L.Ed.2d 494, 501 (1985), quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, [92 S.Ct. 2701, 2709, 33 L.Ed.2d 548] (1972)." *Greenstein v. Department of Health,* 98 Pa. Commw. 445, 452, 512 A.2d 739, 742-43 (1986).

In other words, the Commonwealth Court in *Greenstein* acknowledged that due process rights of physicians under the Act extended to those situations where

---

1. See also, the Commonwealth Court's decision in *Carlini v. Highmark,* 756 A.2d 1182 (Pa. Commw. 2000) which reasserted the holding in *Rudolph* that physicians are entitled to due process rights under the Act, because a professional health services plan corporation was a "state actor."

the physician suffers the loss of a protected property interest.

Accordingly, in the present matter, the plaintiff is afforded full due process rights in regards to the defendant's administrative process as to the alleged overpayment issue. Furthermore, both the plaintiff and the defendant are guided by the Highmark Blue Shield Review Committee Guidelines. The guidelines provide for both notice and a hearing for an aggrieved physician regarding payments. Furthermore, paragraph 10 of the guidelines provides that following a review committee meeting, that the physician will "be advised in writing within 30 calendar days of all determinations made by the committee." There is no dispute between the parties that the plaintiff received notice of the committee's decision more than 30 days beyond the original date. In fact, the letter received by the plaintiff was dated 31 days after the hearing, and post-marked 35 days after the hearing, and finally, not received until 37 days after the hearing. Based on this time line, it is obvious that the defendant has willfully chosen to deviate from its own regulations regarding payment dispute with its participating physicians.

The issue then becomes, does this willful deviation by the defendant in disregarding its regulations, constitute a violation of the plaintiff's due process rights? The court finds that such a deviation does constitute a violation of the plaintiff's due process rights. While the defendant vigorously asserts that the plaintiff was afforded notice and a hearing, the defendant has completely overlooked the most important element of due process protection, which it is compromising by disre-

garding its regulations, that being the loss of the plaintiff's protected property interest, which is of course, the $28,168.75. The defendant is bound by its regulations under the Act, and the defendant's regulations clearly state that written notice to an aggrieved physician must be issued within 30 calendar days. In the present matter, not only did the plaintiff not receive notice within 30 calendar days, the notice was actually dated beyond the 30-day limit in which the notice was to be issued. By demanding repayment outside the notice requirements of its regulations, the defendant is blatantly harming the plaintiff's property interest in the $28,168.75, which was created upon the defendant's failure to provide proper notice.

In making this conclusion, the court is guided by the Commonwealth Court's decision in *Greenstein v. Department of Health,* 98 Pa. Commw. 445, 512 A.2d 739 (1986), where as previously stated in this decision, the court found that a person is entitled to due process protection where by state action, he or she suffers the loss of a protected property interest. In *Greenstein,* the court found that where a physician electively chose to not attend a hearing challenging a professional health service corporation's decision to remove him from its register for cause, the physician was still afforded due process, because he was given notice, and the opportunity to be at a hearing, though he waived his protected property interest by failing to attend the hearing. See *Greenstein v. Department of Health,* 98 Pa. Commw. 445, 512 A.2d 739 (1986).

In reviewing *Greenstein,* this court notes that the physician had a vested property right, that being his inclu-

sion in the professional health service corporation's register. As such, the physician was afforded full due process protection per the corporation's regulations. Applying *Greenstein* to the present matter, this court would note that if the plaintiff chose to disregard the hearing before the defendant's committee, he would have waived any opportunity to challenge the defendant's decision to order a repayment of its funds. Furthermore, this court has no doubt that if the plaintiff willfully disregarded the defendant's regulations on disputes, that the defendant would contend that the plaintiff had waived his rights and interests to the payment. However, the plaintiff did not disregard the defendant's regulations, and fully complied with their requirements. Unfortunately, it is the defendant who has disregarded its own regulations and is now attempting to circumvent its own notice requirements by failing to repay the physician the funds owed.

The court notes that due process rights are not a creature of flexibility that can be molded to accommodate the whims of a state actor as so attempted by the defendant. Due process rights are firm: notice must be given, a hearing conducted, protected property interests must be preserved, and *regulations must be followed.* In the present matter, the defendant has chosen to mold its regulations to accommodate its own whims or "clerical oversights"; such actions are not acceptable, and are a violation of the plaintiff's due process rights. As such, the plaintiff's motion for judgment on the pleadings is granted.

Accordingly, the following order is granted.

## ORDER

And now, November 18, 2005, it is hereby ordered and decreed that the court finds that with no genuine issue of facts existing, the plaintiff is hereby entitled to judgment as a matter of law. As such, the plaintiff's motion for judgment on the pleadings is granted, and the defendant is hereby ordered to pay the plaintiff the amount of $28,168.75, together with interest at the statutory rate from the date of each setoff.