**WILCO MECHANICAL SERVICES, INC., Petitioner**

v.

**DEPARTMENT OF GENERAL SERVICES, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 1, 2011.

Decided July 22, 2011.

Publication Ordered Oct. 19, 2011.

John G. Richards, II, Conshohocken, for petitioner.

Michael C. Barrett, Senior Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

Wilco Mechanical Services, Inc. (Wilco) petitions for review from the final decision of the Department of General Services (DGS) that affirmed the Bureau of Minority and Women Business Opportunities' (BMWBO) denial of Wilco's request for certification as a Women's Business Enterprise (WBE).

On April 30, 2010, Wilco applied for certification as a WBE with the BMWBO and submitted extensive documentation [1] in support of its principal, Meaghen Moyer's (Moyer) request. On June 21, 2010, BMWBO denied Wilco's application:

> The ... BMWBO has reviewed your application for certification as a Women Business Enterprise. After pg. careful review, BMWBO has determined that your firm does not meet the requirements for a Women Business Enterprise as required by the eligibility standards. This determination is based on information found in 4 Pennsylvania Code, Chapter 58, titled Statement of Policy related to Ownership, Management and Operational Control of this Business....
>
> ...
>
> Wilco Mechanical Services Inc. does not meet the criteria of a Women Business Enterprise for the following reasons:
>
> The Statements of Policy, § 58.204(2)(ii) states that "An eligible MBE or WBE under this subchapter shall be an *independent business*.... In determining

whether a potential MBE or WBE is an *independent business,* BMWBO will consider all relevant factors...." Wilco Mechanical Services Inc. *is not an independent company because its business relationship with Anchor Fire Protection, a non W/MBE entity that is owned by Ms. Meaghen Moyer's father Mr. Ted Wills, Jr. Wilco ... is in the exact same business line as Anchor Fire Protection (AFP).* Their application lists Wilco as providing services in fire protection, sprinkler fabrication and installation and supplier of related materials.... Ms. Moyer, the sole owner/employee at Wilco, is also an employee at AFP where she works 24 hours per week. Besides having the same business line and shared personnel, Wilco is located in the same building as AFP. Ms. Moyer rents office space from her parent. Moreover, AFP has been a key subcontractor for Wilco....

BMWBO Decision, June 21, 2010, at 1–2; Reproduced Record (R.R.) at 23a–24a.

On July 20, 2010, Wilco petitioned for reconsideration and alleged:

> The Department's initial determination and refusal to certify Wilco as a WBE was incorrect. The Department incorrectly determined that Wilco is not an "independent business". The relevant Pa.Code Section § 58.204(2)(i) places emphasis on the "Ownership" of the proposed WBE. As demonstrated in the application, Wilco is 100% owned by an eligible person, Meaghen Moyer. The Department did not find any deficiency with the "ownership and control" requirements stated in the regulations. The Department also failed to question the fact that Ms. Moyer has "real, sub-

[1]. The documents submitted to BMWBO included Moyer's resume, industrial certifications, financial information, articles of incorporation, quarterly federal tax return, Pennsylvania Corporate Tax Report, minutes, bonding information, and contracts. *See* Agency Record at 000001–000220.

stantial and continuing" involvement and expertise in the business.

. . . .

As noted above, the Department's denial of certification rests solely on the assertion that Wilco is not sufficiently independent. No other objections to certification were raised by the Department. The Department incorrectly applied subjective criteria to evaluate Wilco's "independence". . . .

Wilco Mechanical Services, Inc. Request for Reconsideration of Denial of WBE Certification, July 20, 2010, at 1–2; R.R. at 21a.

After an on-site visit to the headquarters of Wilco on August 26, 2010, BMWBO found the following facts:

1. Wilco . . . is in the exact same business line as . . . AFP. . . . Additionally, Wilco['s] . . . website states: "Wilco . . . is soon to be WBE certified provider of sprinkler installation and supplies." However, when asked to describe her company's business philosophy she said: "I applied for installation and supply but I'm mainly focusing on the supply end."

2. . . . When asked if she still works for ATF Ms. Meaghen [Moyer] said "No". When asked, "When did you quit," Ms. Meaghen [Moyer] said she quit ATF in December 2009 and started with Wilco in January 2010. However, Ms. Moyer did not purchase Wilco . . . until April 1, 2009.

3. Ms. Meaghen [Moyer] indicated to Ms. Yidi Outhier and me [Harold Levy] that she does not share any other equipment with Anchor Fire Protection. However, when I [Harold Levy] called Anchor Fire Protection and asked to speak to Ms. Meaghen Moyer, I was put on hold and transferred to Ms. Meaghen's [Moyer's] office which is in the office adjoining Anchor Fire Protection.

4. When asked if Wilco . . . subcontracted out their [sic] installation services to Anchor . . ., Ms. Meaghen [Moyer] said "Yes, but there was no formal written agreement. However, when asked what percent of the work at Wilco in the past two years has been subcontracted to AFP and other subcontractors, Ms. Moyer produced a copy of the information sent originally to Ms. Yidi Outhier in an e-mail dated June 14, 2010 which is shown below:

For the Liberty High School contract (2005–2009) the subcontracts breakout as follows:

. . . .

90% of the installation was done by Wilco Mechanical

90% of the material was subcontracted to Anchor Fire Protection

100% of the fabrication was subcontracted to Anchor Fire Protection.

These subcontracts were based on verbal agreements. There was work done at Liberty High School in 2009 but the tax return for the part of the year that the work was done was just filed on Friday.

For the Upper Hanover Township Building (2007–2008)

100% of the material and fabrication was subcontracted to Anchor Fire Protection.

. . . .

90% of the installation was performed by Wilco Mechanical.

Findings that support approval of certification:

1. Ms. Meaghen Moyer is the President and sole owner (100%) of Wilco Mechanical Services, Inc.

BMWBO's Onsite Review Report, August 26, 2010, Findings of Fact (F.F.) Nos. 1–4 at 2–3; R.R. at 19a–20a.

On September 9, 2010, the DGS determined that "the decision denying certification is hereby upheld ... Ms. Moyer has failed to sufficiently establish that Wilco is an independent business pursuant to Statement of Policy § 58.204(2)(ii). Failure to comply with or meet this sole requirement is basis enough for denial even though Ms. Moyer may have met other requirements for certification." DGS's Final Decision, September 9, 2010, at 1; R.R. at 17a.

## I. Was Wilco Denied Due Process ?

■■■ Initially, Wilco contends[2] that it was denied due process regarding BMWBO's denial of certification.[3] Counsel for Wilco asserts that DGS ignored counsel's request to participate in the reconsideration process and failed to provide a formal hearing.

DGS responds that Wilco was not deprived of any property right or liberty interest that required DGS to hold a formal hearing. *Pennsylvania Interscholastic Athletic Association, Inc. v. Greater Johnstown School District*, 76 Pa.Cmwlth. 65, 463 A.2d 1198 (1983). Specifically, DGS asserts that the denial of certification

as a WBE did not rise to the level of an adjudication to warrant appellate review. DGS poses that a lack of certification did not preclude Wilco from bidding on a government contract or procurement.

In *Greenstein v. Pennsylvania Department of Health,*[4] 98 Pa.Cmwlth. 445, 512 A.2d 739 (1986), this Court stated:

An adjudication is defined as '[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, duties, liabilities or obligations of any or all of the parties to the proceedings in which the adjudication is made.' 2 Pa.C.S. § 101. Section 504 of the Law [Administrative Law and Procedure] provides that '[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.' 2 Pa.C.S. § 504. *'The essential elements of due process in administrative proceedings are notice and the opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case, before a tribunal with jurisdiction over the matter.'* Wo-

2. This Court's review is limited to a determination of whether the agency's findings of fact are supported by substantial evidence, whether the agency committed an error of law, and whether a party's constitutional rights were violated. *Cardiac Science v. Department of General Services*, 808 A.2d 1029, 1033 n. 3 (Pa.Cmwlth.2002).

3. This Court has foregone the sequence of Wilco's arguments.

4. In *Greenstein*, Pennsylvania Blue Shield (PBS) had received complaints from certain subscribers that Sidney Greenstein, M.D. (Greenstein) "had charged them fees in excess of the PBS allowance." *Id.* at 740. After PBS investigated, it demanded that Greenstein return all excess payments and that his refusal to do so constituted a violation of the Participating Doctor's Agreement with Penn-

sylvania Blue Shield (Agreement). After Greenstein refused, the PBS referred the matter to the Medical Review Committee (MRC). The MRC recommended the termination of Greenstein as a participating member in the Agreement. The Pennsylvania Department of Health (Department) approved MRC's recommendation.

Before this Court, Greenstein argued that he was entitled to a hearing before the Department, "the agency with the authority to approve or disapprove the termination." *Id.* at 742. This Court rejected Greenstein's argument: "[W]e fail to see how remaining a participating doctor with PBS affects 'privileges, immunities, duties, liabilities or obligations under Section 504 of the Law. Therefore, we do not believe that Petitioner [Greenstein] is entitled to a hearing before the Department under Section 504 of the Law.' " *Id.* at 744.

jciechowski v. Unemployment Compensation Board of Review, 47 Pa.Commonwealth Ct. 116, 119, 407 A.2d 142, 143 (1979). (footnote omitted and emphasis added).

Id. at 743. In Greenstein, this Court cautioned that "[n]ot every action by an agency constitutes an adjudication." (emphasis added). Id. at 743 n. 6, citing Salvucci v. Secretary of Commerce, 81 Pa.Cmwlth. 361, 473 A.2d 1107 (1984).

In NHS Human Services of Pennsylvania v. Department of Public Welfare, 985 A.2d 992 (Pa.Cmwlth.2009), this Court also stated:

> A letter can constitute an adjudication, requiring notice and a hearing, if a two-prong test is met: 1) the letter must be an agency's final order [5], decree, determination, or ruling; and 2) it must impact on a party's personal or property rights, privileges, immunities, duties, liabilities or obligations. Guthrie [v. Borough of Wilkinsburg, 505 Pa. 249, 478 A.2d 1279 (1984). (emphasis added) ].

Id. at 994–95.

In Presbyterian Medical Center v. Department of Public Welfare, 792 A.2d 23, 29 (Pa.Cmwlth.2002), appeal denied, 576 Pa. 717, 839 A.2d 354 (2003), this Court noted that "[i]n order to have a constitutionally protected property interest, a party must have more than a unilateral expectation, but rather, a legitimate and enforceable claim under the law." (emphasis added).

Last, in Pennsylvania Human Relations Commission v. Norristown Area School District, 473 Pa. 334, 374 A.2d 671 (1977), our Pennsylvania Supreme Court noted that " 'a general statement of policy is the outcome of neither a rule making nor an adjudication....' " (emphasis added). Id. at 349–50, 374 A.2d at 679, quoting Pacific Gas & Electric v. FPC, 164 U.S.App.D.C. 371, 506 F.2d 33, 41 (1974).

Here, the entire certification process for a MBE and WBE is found in the statement of policy under 4 Pa.Code § 58.201 (Policy) which provides:

> (a) Executive Order No. 2004–6, 4 Pa. Code Chapter 1, Subchapter LL (relating to minority and women business enterprise), established the Department as the central agency to manage and develop the participation of minority and women-owned businesses and other disadvantaged businesses in Commonwealth contracts. The Executive Order directed the Department to expand the pool of minority and women-owned businesses that are certified as MBEs and WBEs. The Department has assigned these responsibilities to its BMWBO.
>
> (b) ... The Executive Order and 62 Pa. C.S. Part I (relating to Commonwealth Procurement Code) give the Department broad authority governing the management and development of the participation of MBEs and WBEs and governing the formulation of general procurement policy. This subchapter gives direction to BMWBO, executive agencies and others as to how that broad authority and agency discretion will be exercised. This subchapter constitutes guidelines to BMWBO, the executive agencies and others within this

---

**5.** 42 Pa. R.A.P. 341 provides:

(a) **General rule.** Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

(b) **Definition of final order.** A final order is any order that: (1) disposes all of claims and all parties.

*Commonwealth. This subchapter is not and does not purport to operate as a regulation and does not have or purport to have the force of law.* (emphasis added).

Here, the certification process for a WBE did not operate pursuant to either a regulation or a statute but as part of a general statement of policy. Therefore, DGS' rejection of Wilco's application for certification as a WBE was not an adjudication and not appealable to this Court.[6]

Accordingly, this Court dismisses Wilco's appeal.

### ORDER

AND NOW, this 22nd day of July, 2011, the petition for review filed by Wilco Mechanical Services, Inc. from an order of the Department of General Services in the above-captioned matter is dismissed.

---

6. The DGS also noted that "Ms. Moyer will be eligible to reapply for certification one year after the original notice of denial dated June 21, 2010." DGS Final Decision at 1.