679 A.2d 805

**JOSEPH P. RUDOLPH, M.D., FAMILY PROFESSIONAL CENTER, P.C., a Professional Corporation and Family Professional Center Laboratory**

**v.**

**PENNSYLVANIA BLUE SHIELD, a Professional Health Service Corporation.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1996.

Filed July 1, 1996.

Charles P. Falk, Pittsburgh, for appellant.

Albert G. Feczko, Jr., Pittsburgh, for appellee.

Before TAMILIA, FORD ELLIOTT and EAKIN, JJ.

TAMILIA, Judge.

Pennsylvania Blue Shield appeals from the judgment entered upon the April 3, 1995 Order confirming an arbitration award in appellees' favor in the amount of $110,580.30.

The medical services underlying this action were performed by appellees, a Blue Shield participating physician and his professional corporation, for appellant's customers between June, 1986 and November, 1987. However, charges for some of the procedures performed by appellees were denied by appellant on the basis that they were neither medically necessary nor cost effective. Thereafter, pursuant to statute and the contract entered by the parties, appellees submitted their claim for payment of fees to the Blue Shield Medical Review Committee. On November 3, 1987, the Medical Review Committee denied appellees' claims and ordered appellees to repay appellant $26,005, which the committee found to have been

improperly paid to appellees for medical services. On December 30, 1987, appellees filed their contract action in the Court of Common Pleas of Allegheny County. Thereafter, in various pleadings, appellant attacked appellees' action on the basis that the trial court lacked subject matter jurisdiction over a Medical Review Committee decision. The court repeatedly denied this claim. On March 20, 1992, the trial court entered an Order by stipulation that appellees' claims were to be heard by a panel of physician arbitrators in lieu of a jury trial. On February 15, 1994, the panel entered its award finding that appellant must repay to appellees the $26,005 refund ordered by the Medical Review Committee's decision of November 3, 1987. Also, the panel found in favor of appellees in the amount of $75,000 for other medical services provided. By Order dated April 3, 1995, the trial court confirmed the arbitration panel's award, added interest and entered judgment against appellant in the amount of $110,580.30. On appeal, appellant again alleges the trial court lacked subject matter jurisdiction to review a decision of the Medical Review Committee.

Thus, the issue in this case, apparently one of first impression in the appellate courts of Pennsylvania, requires us to determine the proper scope of judicial review, if any, following an award by a professional health corporation's review committee established pursuant to the Pennsylvania Health Services Plan Corporations Act, 40 Pa.C.S. § 6301 *et seq.* ("Regulatory Act"). Initially, our review of Pennsylvania appellate case law reveals only two references to this issue, neither of which is conclusive on the question at issue.

The first case, *Pennsylvania Blue Shield v. Commonwealth Dept. of Health*, 93 Pa.Cmwlth. 1, 500 A.2d 1244 (1985), involved an appeal from a Medical Review Committee determination that Blue Shield had not improperly withheld fees from KGD, a group of Blue Shield participating physicians. Following the determination, KGD filed a complaint with the Department of Health, which determined Blue Shield improperly had withheld fees and ordered payment of those fees. Blue Shield then appealed the Department of Health's Order

to the Commonwealth Court. In holding that the Department, as an administrative agency, had no jurisdiction to review the Medical Review Committee decision, the court also noted:

A doctor can always seek review of an unfavorable Medical Review Committee decision concerning a contractual provision with the professional health service corporation in the appropriate state court with jurisdiction over contract disputes.

*Id.* at 13–14, 500 A.2d at 1250.

Unfortunately, the authority of this statement is undermined not only by the fact that it was offered without citation, but also because it is clearly dictum, being irrelevant to whether the Department of Health can review a Medical Review Committee decision. Moreover, the statement does not disclose whether the "review" which the court finds available includes a trial de novo or merely a limited review for fraud or misconduct in the committee proceeding.

Following the adverse decision in *Pennsylvania Blue Shield,* KGD filed suit in the Court of Common Pleas of Philadelphia County to obtain the withheld fees. The trial court granted judgment on the pleadings in favor of Blue Shield and KGD appealed to this Court. In affirming the grant of judgment on the pleadings, we held that "since KGD failed properly to seek review of the Medical Review Committee's decision, the issue ... has been finally adjudicated." *Kline v. Blue Shield of Pennsylvania,* 383 Pa.Super. 347, 351–53, 556 A.2d 1365, 1368 (1989). The obvious implication of this holding, which explicitly relied upon *Pennsylvania Blue Shield,* is that some type of "review" was available to KGD. However, no further citation is offered for this proposition and, like the Commonwealth Court in *Pennsylvania Blue Shield,* we did not discuss the nature of "review" available.

Hence, *Pennsylvania Blue Shield* and *Kline* provide little guidance on the question of whether review is available from an adverse committee decision. Further, even assuming *Pennsylvania Blue Shield* and *Kline* are sufficient authority

for the proposition that review is available, they do not disclose whether that review may proceed de novo or only for a determination of unfairness in the committee proceeding. Hence, we consider these questions anew and, turning to Pennsylvania statutory and analogous case law, we find that review from an adverse committee decision, while available, may be obtained only upon an allegation of fraud or misconduct in the committee proceeding. The grant of a trial de novo to appellees was therefore in error.

Our analysis begins with the Regulatory Act, which governs the relationship of the parties involved herein. Section 6324(c) of the Act provides as follows:

### § 6324. Rights of health service doctors

.  .  .  .  .

**(c) Disputes.**—All matters, disputes, or controversies relating to the professional health services rendered by the health service doctors, or any questions involving professional ethics, **shall be considered and determined only by** health service doctors as selected in a manner prescribed in the bylaws of the professional health service corporation.

(Emphasis added.)

Pursuant to the mandate of this section, appellant has promulgated Article X of its bylaws, which provides in relevant part:

### ARTICLE X

### Disputes and Controversies Involving Doctors

Section 1. Review Committees. All matters, disputes or controversies arising out of the relationship between the Corporation and doctors of medicine ... **shall be considered, acted upon, disposed of and determined by** the appropriate one of the two Review Committees hereinafter referred to.

Section 2. Medical Review Committee. There shall be a Medical Review Committee consisting of at least five (5) members. . . .

(Emphasis added.)

In order to become a Blue Shield participating physician, appellees executed the following contract:

Participating Doctors Agreement With Pennsylvania Blue Shield

I, the undersigned doctor of medicine duly licensed to engage in practice under the applicable laws of the Commonwealth of Pennsylvania, in consideration of being registered by Pennsylvania Blue Shield (hereinafter termed "Blue Shield") as a Participating Doctor, do hereby agree as follows:

I will perform services for Blue Shield subscribers, make reports to Blue Shield concerning such services and accept compensation therefore, **as provided for in the Blue Shield Regulatory Act,** as heretofore or hereafter reenacted or amended, and the **By-laws** [and] the applicable rules and regulations[.]

R. 32a (emphasis added).

Hence, in exchange for access to appellant's customers, appellees executed a contract agreeing to abide by the Regulatory Act and appellant's bylaws. As noted above, the Regulatory Act provides that disputes "shall be considered and determined only by health service doctors as selected in a manner prescribed in [appellant's] bylaws". Also as noted above, Article X of those bylaws provides that all disputes "shall be considered, acted upon, disposed of and determined by the [Medical Review Committee]". Upon execution of the Participating Doctors Agreement, appellees explicitly and voluntarily assumed the obligations included in section 6324(c) and Article X. These sections, which use the phrases "determined only by", "acted upon" and "disposed of", clearly contemplate finality in the committee decision.

■ On this basis, we reject appellees' claim that the committee proceeding was merely a "preliminary" and "initial

procedure" (Appellees' brief at 8, 15) prior to trial in the Common Pleas Court. Such a construction would not only defeat the legislative intent behind section 6324(c) and render the proceeding contemplated therein irrelevant, but it would also require the duplicative and expensive litigation which section 6324(c) obviously seeks to avoid. We will not countenance such a construction. *See* 1 Pa.C.S. § 1922(1) (statutory presumption that legislature does not intend "absurd" or "unreasonable" result).

Moreover, 1 Pa.C.S. § 1504 provides as follows:

**§ 1504. Statutory remedy preferred over common law**

In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect.

Our Supreme Court has discussed section 1504 as follows:

This statute says in unambiguous language that, if the legislature provides a specific, exclusive, constitutionally adequate method for the disposition of a particular kind of dispute, no action may be brought in any "side" of the Common Pleas to adjudicate the dispute by any kind of "common law" form of action other than the exclusive statutory method.

*School District of the Borough of West Homestead v. Allegheny County Board of School Directors*, 440 Pa. 113, 118–19, 269 A.2d 904, 907 (1970). Thus, in light of section 6324(c)'s mandate that the instant dispute "shall be considered and determined only by" the Medical Review Committee, that proceeding was appellees' "specific [and] exclusive" remedy and they were improperly permitted to proceed with a trial de novo, so long as the committee proceeding was "constitutionally adequate". *Borough of West Homestead, supra.*

Turning to the constitutional validity of the committee proceeding, we note appellees' claim that they "were not given a full and fair hearing" because they "were not represented by

counsel, were not permitted to call witnesses, were not permitted to cross-examine representatives from Blue Shield[,] were not permitted to have a record made of the hearing [and] the Medical Review Committee refused to consider numerous claims". (Appellees' brief at 12–13.)

Initially, in holding a Medical Review Committee proceeding constitutionally adequate, the Commonwealth Court has stated:

> The essential elements of due process in administrative proceedings are notice and the opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case, before a tribunal with jurisdiction over the matter.

*Greenstein v. Commonwealth Dept. of Health,* 98 Pa.Cmwlth. 445, 453, 512 A.2d 739, 743 (1986), citing *Wojciechowski v. Unemployment Compensation Board of Review,* 47 Pa. Cmwlth. 116, 119, 407 A.2d 142, 143 (1979). Further, our Supreme Court has noted that "due process is not synonymous with judicial process." *Commonwealth v. Cronin,* 336 Pa. 469, 473, 9 A.2d 408, 410 (1939).

Appellant's guidelines governing the conduct of its Medical Review Committee include the following provisions:

PA Blue Shield
**Review Committee Guidelines**

. . . . .

4. . . . **The provider [physician] will be encouraged to submit any additional information** which could have a bearing on the matter and/or create the basis for a settlement or adjustment to the refund amount requested, if any.

5. Should further communications fail to result in an agreement as to the provider's refunding and overpayment, if any, or other matters pertaining to the review, **the provider will receive written notification at least thirty (30) calendar days in advance of the date of the Review Committee meeting** at which his case will be considered, **of his right to appear before the committee and of his right to be represented by legal counsel. The provider is again encouraged to provide any information which may be**

pertinent to the resolution of the matter. **Accompanying the letter is another copy of the basis of any refund requests,** the applicable section(s) of the Blue Shield By-laws pertaining to review committees, the review committee guidelines and, if applicable, the participating doctors agreement and the regulations for participating doctors.

6. At least fifteen (15) calendar days prior to the date of the review committee meeting at which his case will be considered, **the provider will be given a copy of the documentation to be presented to the review committee.**

7. **A provider may forward information to the review committee or,** upon written request to the secretary of the committee, **may appear before the committee. A provider** who requests to appear before the committee **will be notified of the date and time of his appearance** at least fifteen (15) calendar days prior to the meeting. **Such notification will inform the provider of the exact nature of the proceeding, of his right to represent his disagreement and to provide any further information** which will aide the committee in its deliberation of the matter.

(R. 41a and 42a; emphasis added.)

Our review of these provisions clearly indicates that providers like appellees are given "notice and the opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case". *Greenstein, Wojciechowski, supra.* Thus, in the absence of any allegation that the committee violated its guidelines in adjudicating appellees' dispute, we find the proceeding constitutionally adequate. *Greenstein, supra,* and appellees were not deprived of their right to trial. *See West Homestead, supra.* Further, it is of no import that appellees failed to be represented by counsel or offer additional evidence of their claims, because they were clearly given the opportunity to do so.

Based on the foregoing, we find that the trial court improperly denied appellant's motion for judgment on the pleadings based on a lack of subject matter jurisdiction and thereafter

erred in allowing appellees to proceed with a trial de novo before the panel of physician arbitrators.

■ Finally, returning to the starting point of this analysis, we find that the "review" found available by the courts in *Kline* and *Pennsylvania Blue Shield* may be obtained only upon an allegation of fraud or other misconduct inherent to the proceeding.[1] In this sense, the review is akin to that available from common law arbitration. 42 Pa.C.S. § 7341 provides as follows:

§ 7341. **Common law arbitration**

The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) ... is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

Instantly, appellees' complaint filed in the Court of Common Pleas made no allegation of "fraud, misconduct, corruption or other irregularity" in the committee proceeding and therefore should have been dismissed based on the court's lack of subject matter jurisdiction.[2]

1. We note appellees' implicit claim that Paragraph B19 of appellant's "Regulations for Participating Doctors" provides a right of de novo review from an adverse committee decision. (Appellees' brief at 17.) The paragraph provides: "A Participating Doctor may seek judicial review of an unfavorable Review Committee decision to the extent permitted by Pennsylvania law." (R. 35a.) However, in light of our determination that only a limited review for fraud or misconduct is "permitted by Pennsylvania law", we reject appellees' assertion.

2. As noted, we have found no appellate cases adjudicating this issue. However, a line of common pleas cases are precisely on point. For instance, in *V.J. Hajjar Associates, Inc. v. Medical Service Association of Pennsylvania,* 15 D. & C.3d 251 (1980), participating Blue Shield physicians sought de novo review from an adverse review committee decision. In holding that it must "bar plaintiffs from any judicial forum", *id.* at 251, the court found that "the bylaws and regulations speak specifically to the matter involved and these contractual agreements along with the statutory requirements impose an exclusive remedy for settling these disputes," *id.* at 254. In *Emergency Medical Associates, Ltd. v. Pennsylvania Blue Shield,* 70 Del. 538 (1983), the court explicitly relied on *Hajjar* for its conclusion that "the dispute

■ Lastly, we note appellees' argument that the Participating Doctors Agreement they executed with appellant constitutes a contract of adhesion. (Appellees' brief at 19.) We flatly reject this claim. Initially, appellees fails to direct our attention to any case deeming a contract between professionals and an insurance association one of adhesion. Further, appellees have not demonstrated the inequality of bargaining power necessary to a contract of adhesion. *See e.g., Black's Law Dictionary,* 5th ed., p. 38 (defining an adhesion contract as a "standardized contract form offered to consumers of goods and services on essentially 'take it or leave it' basis . . . . Distinctive feature of adhesion contract is that weaker party has no realistic choice as to its terms.") We therefore reject the claim that the agreement entered into by the parties in this case is a contract of adhesion.[3]

provision of the Blue Shield Regulatory Act mandates the exclusive remedy available to Blue Shield and its participating doctors and all controversies arising out of the contractual relationship. . . . We hold that plaintiff is statutorily and contractually limited to this remedy, being reviewed by the Medical Review Committee, and we therefore conclude that the court properly sustained defendant's preliminary objections and dismissed plaintiff's complaint." *Id.* at 543. Finally, in *Carlisle Pediatric Center v. Medical Services Association of Pennsylvania,* 40 D. & C.3d 250 (1986), the Court of Common Pleas of Cumberland County explicitly relied on *Hajjar,* and *Emergency Medical Associates* in granting Blue Shield's preliminary objections and dismissing plaintiff's complaint, which sought review of a Medical Review Committee decision. On the contrary, it appears that one Common Pleas case, *R.R.S. Imaging Associates v. Medical Service Association,* 49 D. & C.3d 339 (1988), has interpreted section 6324(c) as not mandating an exclusive forum for these disputes. For the reasons suggested above, we find the former cases suggest the wiser course. We also reject appellees' attempt to distinguish the former cases because of their equitable nature. Our conclusion herein that the Court of Common Pleas lacked subject matter jurisdiction renders it an improper forum for appellees' action, whether the court is sitting at law or in equity. *See Hajjar, supra* at 251, 259–260 ("We must not only decline to entertain equity jurisdiction in this case, but we must also bar plaintiffs from any judicial forum. . . . [T]he above discussion obviously proscribes not only equity jurisdiction but any access to the courts.").

3. For a scholarly opinion rejecting precisely the claim raised by appellees herein, *see Hajjar, supra* at 256–259. (The court notes, "the contract before us simply does not fit this pattern. No case has been called to our attention nor have we been able to find any involving contractual relationships between professional service providers and insurance associations of the type here involved. It is certainly debata-

Based on the foregoing, we find that parties aggrieved by an adverse determination of a professional health corporation's dispute review committee, promulgated pursuant to 40 Pa.C.S. § 6324(c), may not seek de novo review of that determination.

Hence, we vacate the judgment entered upon the April 3, 1995 Order confirming the award of the physician arbitrators.

Judgment vacated.

Jurisdiction relinquished.

Dissenting opinion by FORD ELLIOTT, J.

FORD ELLIOTT, Judge, dissenting.

I respectfully dissent.

As indicated by the majority, the courts of this Commonwealth have alluded that some form of judicial review is available as to disputes resolved under 40 Pa.C.S.A. § 6324. *See Kline v. Pennsylvania Blue Shield,* 383 Pa.Super. 347, 556 A.2d 1365 (1989), and *Pennsylvania Blue Shield v. Commonwealth Department of Health,* 93 Pa.Cmwlth. 1, 500 A.2d 1244 (1985), *appeal denied, Com., Dept. of Health v. Pa. Blue Shield,* 514 Pa. 632, 522 A.2d 560 (1987). Today, the majority limits that review to those instances where fraud or some other misconduct inherent to the in-house proceeding is alleged. I disagree with this interpretation and must respectfully dissent.

I believe that the majority has misperceived the nature and purpose of the statute at issue. The intent of the Legislature in enacting 40 Pa.C.S.A. § 6301 *et seq.* was to ensure access and availability of professional health services to all citizens of this Commonwealth regardless of economic ability to pay. Within this context, the resulting statute sought to regulate the burgeoning health insurance industry. Pursuant thereto,

ble whether in fact Blue Shield is in a grossly superior bargaining position. Many dentists are not participating members and there is nothing to indicate that any particular economic hardship would result from not participating. Perhaps most importantly, the provision under attack, i.e., compulsory arbitration of disputes within the association, does not suggest any inherent unfairness to plaintiffs.")

the Legislature created a statutory scheme whereby health service plan corporations would be certified and policed. Section 6324 in particular appears to have been enacted to *protect* doctors from the worst potential transgressions by health service plan corporations, occurring where the corporation attempts to limit the treatment choices of participating health service doctors on the basis of economy.

This scheme is reflected in § 6324(a), which allows *any* doctor who complies with the approved regulations of the corporation to register with the corporation for the provision of covered medical services. This subsection also prohibits the corporation from refusing to register such doctor or from removing such doctor from the register without the approval of the Department of Health. The protective scheme is also seen in § 6324(b) which prevents the corporation from imposing any restrictions upon registered doctors as to methods of diagnosis or treatment in order to preserve the doctor/patient relationship as it ordinarily exists in the community. Finally, the protective scheme is manifested in § 6324(c) which attempts to ensure that internal disputes regarding services or ethics, between the corporation and its registered doctors, will be resolved by *doctors* and not by accountants or bureaucrats, who might exalt cost effectiveness over medical necessity or propriety. It seems improper to me to stand this subsection on its head and employ it to limit the rights of doctors in favor of bestowing an enormous benefit on the health service plan corporations it was meant to police. I find myself in complete agreement with the analysis of Judge Hoffer of the Cumberland County Court of Common Pleas:

> The purpose of section 6324 is illustrated by its heading: 'Rights of health service doctors.' Subsection (a) provides that every doctor has the right to register with any professional health service corporation; the corporation may refuse to accept such only with the Department of Health's approval. Subsection (b), entitled 'Freedom from control,' prohibits the corporation from infringing on the normal doctor-patient relationship, including the patient's choice of a doctor and the doctor's methods of treatment.

Subsection (c) provides that disputes are to be considered and determined only by health service doctors. Considering its context, its purpose seems to be similar to that of the Peer Review Protection Act, 63 P.S. § 425.1 et seq., i.e., 'to encourage peer evaluation of the health care....' *Robinson v. Magovern,* 83 F.R.D. 79, 87 (W.D.Pa.1979). *'[O]nly by health service doctors' is meant to keep laymen from deciding the disputes, not to keep doctors out of court.* RRS Imaging Associates Ltd. v. Medical Service Association of Pennsylvania, 49 Pa. D. & C.3d 339, 334–35 (1988) (emphasis added).

Nevertheless, even if I agreed with the majority as to the nature and purpose of 40 Pa.C.S.A. § 6324, I would be compelled to dissent in this case for reasons which are far more profound. Simply stated, the dispute resolution mechanism as interpreted by the majority, and as implemented by appellant, runs afoul of due process of law.

Citing *Greenstein v. Commonwealth Dept. of Health,* 98 Pa.Cmwlth. 445, 512 A.2d 739 (1986), *appeal denied,* 516 Pa. 636, 533 A.2d 94 (1987), the majority finds that the essential elements of due process are notice and the opportunity to be heard and to defend in an orderly proceeding before a tribunal with jurisdiction. The majority then quotes relevant excerpts from Pennsylvania Blue Shield's Review Committee Guidelines and finds the notice and opportunity to be heard components of due process to be satisfied.[1] However, I believe the majority has overlooked the most basic aspect of due process; to have any value, notice and hearing must lead to review by an *impartial* tribunal. The necessity for a hearing by an impartial tribunal has been recognized on both the federal and state levels. *See Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33

---

1. While the Guidelines do appear to provide for notice, an opportunity to be heard, a right to counsel, and a right to present evidence, the statute requires review procedures to be contained in the corporate bylaws. However, the bylaws of Pennsylvania Blue Shield appear to provide for notice, the right to counsel, the right to call witnesses and present evidence, as well as other rights, only in disputes where the doctor's status as a participating (registered) doctor is at issue. As to other types of disputes, the bylaws make no such due process guarantees. The instant review process is thus flawed in this respect also.

L.Ed.2d 83 (1972), and *Lyness v. Commonwealth, State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992). This due process right attaches in administrative proceedings as well as in courts. *Sherman v. Kaiser,* 664 A.2d 221, 224 n. 4 (Pa. Cmwlth.1995). This vital aspect of due process, however, is missing instantly.

The majority has likened the review process at hand to that of arbitration. Arbitration jurisprudence demonstrates the lack of due process in the case *sub judice.* This court has previously ruled:

> The hearing to which each party is entitled must be one that is 'full and fair.' *Abramovich v. Pennsylvania Liquor Control Bd., supra* 490 Pa. at 294, 416 A.2d at 476; *Smaglio [Smaligo] v. Fireman's Fire [Fund] Insurance Co.,* 432 Pa. 133, 247 A.2d 577 (1968); *Mellon v. Travelers Insurance Co.,* 267 Pa.Super. 191, 406 A.2d 759 (1979). 'Procedural due process requires that a fair hearing be conducted by one not involved with a party to the proceeding.' *Abramovich v. Pennsylvania Liquor Control Bd., supra* citing *Dussia v. Barger,* 466 Pa. 152, 351 A.2d 667 (1976). See also: *[James D.] Morrisey [Inc.] v. Gross Construction Co., Inc.,* 297 Pa.Super. 151, 159–160, 443 A.2d 344, 348–349 (1982). But cf. *Morris Lapidus Associates v. Airportels, Inc.,* 240 Pa.Super. 80, 84, 361 A.2d 660, 663 (1976).

A hearing which comports with procedural due process must be full and fair and must be held before impartial and disinterested arbitrators. 'Since arbitrators are generally selected to act in a quasi-judicial capacity in place of a court, they must ordinarily be impartial and nonpartisan....' 5 Am.Jr.2d, Arbitration and Award, § 98.

> If parties are to be encouraged to arbitrate, arbitration proceedings must be conducted with the same degree of impartiality as the courts afford. Public policy requires, therefore, that arbitrators not only be completely impartial but also that they have no connection with the parties or the dispute involved which might give the appearance of their being otherwise. Obviously a person is disqualified to act as an arbitrator if he is himself a party to the

dispute. And, in the ordinary case, a close relative, servant, employee, or agent of one of the parties to the controversy, or one who has any secret interest in the result or decision thereof, may not properly act as an arbitrator.

5 Am.Jr.2d Arbitration and Award, § 99.

*Donegal Insurance Co. v. Longo*, 415 Pa.Super. 628, 632–633, 610 A.2d 466, 468 (1992). Furthermore, it has been held that the requirement of an impartial arbitrator is even more compelling where a party must consent to arbitration as the method of resolving disputes. *See Abramovich v. Pennsylvania Liquor Control Board*, 490 Pa. 290, 416 A.2d 474 (1980).

The bylaws of Pennsylvania Blue Shield make the following provisions for the selection of members of its Medical Review Committee:

Section 2. Medical Review Committee. There shall be a Medical Review Committee consisting of at least five (5) members, each of whom shall be appointed by the Chairman of the Board of Directors of the Corporation and each of whom shall serve until his successor is appointed. A majority of the members of the Medical Review Committee shall be doctors who are either members of the Board of Directors of the Corporation or members of the Corporation.

Bylaws, Article X, Section 2. It is readily apparent that the case under review presents the most egregious situation possible from a due process point of view: a party to a dispute is effectively sitting in judgment of that dispute. The "arbitrators" in this case are hand selected by the Chairman of the Board of Pennsylvania Blue Shield. Moreover, the majority of the Medical Review Committee must be comprised of other members of the Board of Directors of Pennsylvania Blue Shield or members of the Corporation. The issue in *Donegal Insurance, supra,* was whether a lawyer can serve as an arbitrator while he simultaneously represents one of the parties to the arbitration in an unrelated matter. We answered that the lawyer cannot so serve. I find the instant situation to be a far more flagrant abuse of the due process rights of doctors such as appellee. If, indeed, the Legislature intended

the dispute review procedure described in 40 Pa.C.S.A. § 6324(c) to be a doctor's "only bite of the apple" to recover the value of his services (except under circumstances of fraud or misconduct as the majority allows), then the review process as implemented by Pennsylvania Blue Shield fails to meet the constitutional requirements of due process of law.

I also reject the comparison of the review procedure described by § 6324(c) to that enacted pursuant to the Uniform Arbitration Act, 42 Pa.C.S.A. § 7301 *et seq.* Arbitration generally provides a much fairer forum. Commonly, where contracting parties have agreed to settle disputes by arbitration, each party is entitled to select one arbitrator and a third is selected by the parties' arbitrators or by the court. This provides an impartial tribunal. Moreover, the Uniform Arbitration Act is much more detailed in establishing the parameters of that dispute resolution mechanism. Contrary to the analysis of the majority, I find no such indication that the Legislature intended to craft a similar mechanism with § 6324(c). The Uniform Arbitration Act is quite explicit in spelling out that the Legislature intended arbitration under the Act to be the only forum of review and resolution except under certain circumstances. *See* 42 Pa.C.S.A. §§ 7314, 7315, and 7341. When the Legislature has previously shown great care and consideration in crafting an exclusive statutory remedy, I cannot find that the Legislature evinced a similar intent in the limited language set forth in § 6324(c).

For all of these reasons, I am constrained to dissent.